UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-cv-81280-MARRA/JOHNSON

FLORIDA IMMIGRANT COALITION; EL SOL, JUPITER'S NEIGHBORHOOD CENTER; AND CORN MAYA, INC.,

Plaintiffs,

MARCOTULIO MENDEZ

Plaintiff-Petitioner,

v.

PALM BEACH COUNTY SHERIFF RIC L. BRADSHAW

Defendant.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO FLORIDA SHERIFF'S ASSOCIATION'S SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiffs continue to aver that Defendant is regularly engaging in the wrongful confinement of pre-trial detainees with Immigration and Customs Enforcement ("ICE") detainers for lengthy periods of time without allowing them to post the bond already determined by a state court judge and their prolonged detention. Defendant disputes this and filed a motion for summary judgment alleging inter alia that the Sheriff does not have a policy or practice of denying individuals the opportunity to post bond when they have an immigration detainer against them and disputes holding individuals beyond the 48-hour ICE detainer period. *See* Defendant's Motion for Summary Judgment and Incorporated Statement of Facts and Memorandum of Law,

dated June 30, 2010 ("Defendant's Motion"). The Florida Sheriff's Association ("FSA") filed an Amicus Curiae Brief Memorandum in support of Defendant's Motion, dated July 7, 2010 ("FSA Brief").[1] *See* DE 57.

The existence of genuine disputes of facts relating to the Defendant's unconstitutional policy and practice as mentioned above constitute grounds for denial of the Defendant's Summary Judgment motion.

**DISPUTED FACTS**

On or about May 14, 2009, Mendez' Pastor, Nicolas Lopez and his friend Ely Mendez arrived at the Palm Beach Jail on Gun Club Road to post bond for Mr. Mendez. *See* Plaintiffs' Complaint, dated September 3, 2009 ("Complaint"), Exhibit B, Lopez' Affidavit, dated May 31, 2009, ¶7 [DE 1]. However, an individual in the Sheriff's Office informed them that the bond would not be accepted because an ICE detainer had been issued. *Id.* at ¶8; *see also* Complaint Exhibit C, Ely Mendez' Affidavit, dated May 31, 2009 ¶3; Plaintiffs' Opposition to Defendant's Summary Judgment Motion, DE 70, ("Plaintiffs' Opposition") Exhibit 1 ("Ex. 1"), Deposition of Ely Mendez, 18-19: 21-1; 24: 21-24; Plaintiffs' Opposition Exhibit 2 ("Ex. 2"), Deposition of Pastor Nicolas Lopez ("Lopez Deposition"), 39: 8-15. As soon as bond was offered and posted, Mr. Mendez would not have been deemed "otherwise detained by a criminal justice agency" and the 48-hour detainer period should have started to run. If ICE did not assume custody of Mr. Mendez within that time, he should have been released from custody. However, Defendant's refusal to allow Mr. Mendez to post bond resulted in the unlawful detention of him for over five

[1] The FSA did not move this Court for permission to seek leave to file an amicus curiae brief in support of Defendant's Motion as required by the Federal Rule of Appellate Procedure 29(a), nor did they seek Plaintiffs' consent in filing such a brief as required by Local Rule 7.1(A)(3) mandating that the FSA must confer with all parties prior to filing a motion. Accordingly, FSA's amicus brief should be disregarded.

months – far longer than the 48-hour detainer period. *See* Plaintiffs' Opposition Exhibit 3 ("Ex. 3"), Deposition of Marcotulio Mendez ("Mendez Deposition"), 53: 20-25.

On July 25, 2009, Pastor Lopez again attempted to post bond for Mr. Mendez. *See* Ex. 2, Lopez Deposition, 41: 14-21. However, he was not allowed to post bond. *See Id.* at 53-54: 21-1. Mr. Mendez testified that he signed papers in jail indicating that he was ready to post bond, but he was never allowed to post it. *See* Ex. 3, Deposition of Marcotulio Mendez, 73:13-23; 38: 19-21.

On September 3, 2009, Mr. Mendez sought habeas corpus relief from this unlawful detention in addition to his civil rights claims under Section 1983. On Thursday, October 9, 2009, Mr. Mendez' felony charges were dismissed by Judge Karen Miller. *See* Plaintiffs' Opposition to Defendant's Motion to Dismiss, Exhibit 1, [DE 15]. However, Mr. Mendez was not yet released by Defendant Sheriff. Plaintiffs' Counsel Barry M. Silver sent a letter to Defendant's Counsel Fred Gelston seeking Mr. Mendez' immediate release on Friday, October 16, 2009. *See Id.*, Exhibit 2. However, Mr. Mendez was again not released by Defendant Sheriff. On Monday, October 19, 2009, the remaining charges against Mr. Mendez were dismissed. His public defender, Daniel Cohen then filed an emergency motion to have him immediately released. *See Id.*, Exhibit 3, Daniel Cohen's Emergency Motion, dated October 19, 2009. Judge Eissey granted Mr. Cohen's motion, dismissed the remaining counts and ordered Mr. Mendez' release at 8:56 am that same day. *See Id.*, Exhibit 4, Order dated October 19, 2009; Exhibit 5, Daniel Cohen's Affidavit, dated October 19, 2009. However, Mr. Mendez was not released from custody by Defendant until 1:32 pm on Wednesday, October 21, 2009 – over 48 hours from the time period authorized by the immigration detainer. *Id.*, Exhibit 6, Defendant Sheriff's Suggestion of Mootness Motion, dated October 22, 2009 at 1.

In violation of governing statutory and constitutional law, as a policy and practice, Defendant Sheriff confines Latinos and other individuals, often for lengthy periods of time, without permitting them to post bond as authorized by a state court. *See* Plaintiffs' Opposition Exhibit 4 ("Ex. 4"), Subhash Kateel Declaration dated July 16, 2009 at ¶¶6, 9; Plaintiffs' Opposition Exhibit 5 ("Ex. 5"), Jeronimo Camposeco Declaration dated July 9, 2009 at ¶6; Plaintiffs' Opposition Exhibit 6 ("Ex. 6"), Mary Jill Hanson Declaration dated July 26, 2010 at ¶¶ 6, 9, 12,15 ("Hanson Declaration"); *see also* Plaintiffs' Opposition Exhibit 7 ("Ex. 7"), Daniel Cohen Deposition ("Cohen Deposition"), 120-122: 5-3 ("I can remember three different Sheriff's deputies – although, I don't remember their names – three different Sheriff's deputies at three different times who told me if there is an ICE hold, I'm not getting them out, and they would use very emphatic or express language. For example, one would say, 'No way, no how, if there is an immigration hold.)'" Marcotulio Mendez encountered at least twelve other individuals detained in jail who were not allowed to post bond for months. *See* Ex. 3, Mendez Deposition, 74-75:19-21; 77: 2-9; 76: 21-23.

Defendant Sheriff "as a matter of policy and practice, has repeatedly disregarded state court orders to admit … defendants to bail, and affirmatively discouraged if not expressly refused to allow such defendants, through third parties, to post bail." *See* Complaint Exhibit A, Daniel Cohen Affidavit, dated June 12, 2009 ¶¶ 2-5; *see also* Ex. 7, Daniel Cohen Deposition, 71: 13-19. Mr. Cohen stated that:

> The policy is to the best of my knowledge and belief that if the Sheriff's Office receives certain forms from ICE, the Sheriff thereby refuses to let the person leave the jail even if they have been ordered released by a State Court Judge on bond, on their own recognizance even if their case is resolved and they got a time served plea like in the case of Mr. Padilla. If they are otherwise free to leave the jail by bond or other means, the Sheriff will not allow them to leave because the Sheriff believes they were bound by the request of ICE and by a contractual agreement,

> but a contractual agreement can't usurp the authority of the United States Constitution." *Id.* at 120-121: 18-5.

The "repeated reports we got from family members or friends was that the Sheriff's Office would tell them that the person is not going to be released in so many words, that it was a waste of time or waste of money and either affirmatively told them not to post bond or affirmatively discouraged them from posting bond." *See Id.* at 114: 14-21.

In his capacity as a public defender, Daniel Cohen has filed approximately seventeen petitions, many seeking habeas and certiorari for people unlawfully arrested and detained by the Palm Beach County Sheriff's Office. Complaint Exhibit A at ¶3. "It could be, it could be several dozen" people that were affected by the Sheriff's unlawful practices. *See* Ex. 7, Cohen Deposition, 33: 7-16. Mr. Cohen believes that he is not the only Assistant Public Defender that has encountered the Sheriff's denial of bond, "I believe there are many Assistant Public Defenders who had encountered this problem." *See Id.* 118-119: 21-24. Defendant's Counsel has stipulated that 17 writs of habeas corpus petitions were filed against the Sheriff. *See* Plaintiffs' Opposition Exhibit 8 ("Ex. 8"), Ric L. Bradshaw Deposition ("Bradshaw Deposition"), 42:9-13. Additionally, Captain Robert Manley stated in his deposition that he has heard complaints "a couple of times" that "individuals were unable to post bond if they had ICE holds." *See* Plaintiffs' Opposition Exhibit 9 ("Ex. 9"), Deposition of Captain Robert Manley ("Manley Deposition"), 142:11-20; 143:13-18.

Defendant Sheriff Bradshaw, other members of the Palm Beach County Sheriff's Office, and their legal counsel have confirmed the existence of these policies and practices. *See Ricketts v. Palm Beach County Sheriff*, 985 So.2d 591 (Fla. 4th DCA 2008), *cert. denied* 998 So.2d 1146 (Fla. 2008); *see* Complaint Exhibit A, Cohen Affidavit ¶5. In response to an inquiry to post

bond for an individual with an ICE detainer, Deputy Sheriff Gwen Morales (who was at Lobby Security assisting everyone who entered the PBSO Gun Club jail during Mr. Mendez' incarceration) stated in her deposition, "right at this moment, they (sic) have a hold for immigration, so there is no bond at this time. You are not going to be able to post bond because they have no bond to be able to post." *See* Plaintiffs' Opposition Exhibit 10 ("Ex. 10"), Gwen Morales Deposition ("Morales Deposition"), 25: 4-12. She later added, "If they have a hold, we can't release them until either ICE or Feds or that county comes to pick them up." *See Id.* at 41:13-20. According to Captain Robert Manley, under current PBSO policy, a family member attempting to post bond can be told that "there is no bond at this time" or that they will not "be able to post bond because they have no bond" when the family member detained has entered into the ICE 48-hour hold period. *See* Ex. 9, Manley Deposition, 136:9-22.

If PBSO staff provides individuals the opportunity to post bond for ICE detainees, they advise the individual trying to post bond that "you can pay the bond, but they won't be released at this time … because there's an ICE hold." *See* Plaintiffs' Opposition Exhibit 11 ("Ex. 11"), Deputy, Gerald Mitchell's Deposition ("Mitchell Deposition"), 16: 17-25. When a person is booked for ICE, PBSO officials instruct people attempting to post bond that they are not getting out of jail. *See* Ex. 11, Mitchell Deposition 21: 15-20; 30: 8-17; 40: 17-18; Ex. 9, Manley Deposition, 129: 1-15; 133: 3-23; 139: 17-22.

Once bond is posted under 8 C.F.R. 287.7, the PBSO can only hold an inmate for 48 hours excluding holidays and weekends for ICE, before that inmate should be released. However, PBSO staff fails to advise individuals when trying to post bond for their loved one that the individual could be released after 48 hours, excluding holidays and weekends if ICE does not pick up that individual – as a detainer expires after the 48-hour time period has elapsed. *See*

Plaintiffs' Opposition Exhibit 12 ("Ex. 12"), Deputy Isaias Flores Deposition ("Flores Deposition"), 21: 3-7; Mitchell Deposition 18: 8-11; 52: 9-10; Manley Deposition, 48-49: 3-22. Such an erroneous instruction constitutes bond interference and discourages individuals from posting bond in violation of the Fourth and Fourteenth Amendments.

## ARGUMENT

### I. The Existence of Genuine Disputes of Fact Relating to Defendant's Unconstitutional Policies and Practices Preclude Summary Judgment for the Defendant.[2]

As stated in the Disputed Facts Section, see supra at 2-7, disputed issues of material facts abound such that summary judgment is precluded. Not only has Daniel Cohen testified that the Sheriff engages in a policy and practice of denying people the opportunity to post bond and their prolonged detention, but Pastor Nicolas Lopez and Ely Mendez have confirmed the existence of such a policy and practice when they tried to post bond for Mr. Mendez in May 2009. *See* Plaintiffs' Opposition, Ex. 1, Deposition of Ely Mendez, 18-19: 21-1; 24: 21-24; Ex. 2, Lopez Deposition, 39: 8-15; Ex. 7, Cohen Deposition, 120-122: 5-3. Pastor Lopez again witnessed the effect of such a policy and practice when he again unsuccessfully attempted to post bond for Mr. Mendez in June of 2009. *See* Plaintiffs' Opposition, Ex. 2, Lopez Deposition, 41: 14-21. Mr. Mendez himself tried to post bond without avail and witnessed at least twelve others that were not allowed to post bond. *See* Plaintiffs' Opposition, Ex. 3, Mendez Deposition, 38: 19-21; 73: 13-23; 74-75: 19-21; 77: 2-9; 76: 21-23.

Even Defendant Sheriff's own employees confirm the existence of a policy and practice of either denying bond altogether or in interfering with bond. *See Ricketts v. Palm Beach County*

---

[2] In determining whether summary judgment is appropriate, the court must review all the evidence and factual inferences reasonably drawn from the evidence in a light most favorable to the nonmoving party. *Rivera v. Amalgamated Debt Collection Serv., Inc., 462 F. Supp.2d 1223, 1226* (S.D. Fla. 2006); *See also Cuesta v. School Board of Miami Dade County,* 285 F. 3d 962, 966 (11th Cir. 2002); *Scott v. Harris,* 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. Pro. 56(c)); *see also, Kingsland v. City of Miami,* 382 F.3d 1220, 1226 (11th Cir. 2004).

*Sheriff*, 985 So.2d 591 (Fla. 4th DCA 2008), *cert. denied* 998 So.2d 1146 (Fla. 2008); *see* Complaint Exhibit A, Cohen Affidavit ¶5. Deputy Gwen Morales informs people that if their loved ones have an ICE detainer against them, they "are not going to be able to post bond because they have no bond to be able to post." *See* Plaintiffs' Opposition, Ex. 10, Morales Deposition, 25: 4-12.

The foregoing certainly contradicts the FSA's assertion that "At best, Plaintiffs can only show that the Palm Beach County Sheriff's Office has a policy of advising individuals that 'there is a federal hold or a hold from another county or a hold from somewhere that, just by posting the bond, the subject is not going to get to leave.'" FSA Brief at 2. Instructing individuals that their loved one will not get out of jail is tantamount to bond interference as the PBSO staff fails to advise individuals when trying to post bond for their loved one that the individual could be released after 48 hours, excluding holidays and weekends if ICE does not pick up that individual – as a detainer expires after the 48-hour time period has elapsed. *See* Plaintiffs' Opposition, Ex. 12, Flores Deposition, 21: 3-7, Ex. 11, Mitchell Deposition 18: 8-11; 52: 9-10, Ex. 9, Manley Deposition, 48-49: 3-22. Clearly, these are all material disputes of fact such that Summary Judgment is improper.

Defendant's formal policy of "notify[ing] persons placing bonds that if there are holds on a detainee, whether federal in nature or not, there was a possibility that a bond could be forfeited" interferes with an inmates' right to post bond as such is an illegal policy. Forfeiture of a criminal bond is not an automatic consequence of a defendant's deportation from the United States. *See* Defendant's Motion for Summary Judgment at 12, ¶24. In fact, Captain Manley advises people of this even though he is not certain whether this is the law. *See* Plaintiffs'

Opposition, Ex. 9, Manley Deposition, 166: 4-17. Any such instruction regarding the consequences of posting bond is erroneous and constitutes bond interference. [3]

At issue here is only Defendant Sheriff Bradshaw's refusal to accept bond for certain individuals leading to their prolonged unlawful detention, a discrete practice well-established to be unconstitutional and which even Defendant acknowledges is unconstitutional – all without adequate process. *See* Defendant's Motion to Dismiss Brief at 3, [DE 6].

II. Sheriff Bradshaw At a Minimum Acted With Reckless Indifference When He Allowed the Violation of the Fourth and Fourteenth Amendments of the Constitution.

Supervisory Defendants are liable if they personally participated in the allegedly unconstitutional conduct or there is a "'causal connection between [their] actions ... and the alleged constitutional deprivation.'" *See West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007)(citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003))[4]. To survive summary

---

[3] Article I, Section 14 of the Florida Constitution protects an individual's right to bond unless a capital crime is involved. It states:

> Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions. If no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained. *Id.*

Florida Statute 903.26 (5)(a) specially exempts from bond forfeiture those who have an impossibility to appear. It states, "The court shall discharge a forfeiture within 60 days upon: (a) A determination that it was impossible for the defendant to appear as required due to circumstances beyond the defendant's control." An individual's inability to attend his court hearing because of deportation is exempt from bond forfeiture as such non-appearance may be deemed an impossibility because the individual was deported. Finally, courts have found that under the Florida Constitution that bond forfeitures are not favored at law, and therefore, statutes providing for such forfeitures are to be strictly construed. *Caivano v. State,* 331 So.2d 331, 333 (Fla. 2nd D.C.A. 1976) ("It is a well established principle of law that forfeitures are not favored at law; and, thus, statutes providing for them are strictly construed.") (citing *Williams v. Stack*, 269 So.2d 771 (Fla. 4th D.C.A. 1972)).

[4] Although Defendant Sheriff has denied personal participation in the promulgation of a policy or practice to deny individuals the opportunity to post bond if they have ICE detainers lodged against them and their subsequent prolonged detention, a genuine issue of fact on whether Sheriff Bradshaw personally participated exists. *See Campbell v. Johnson*, 586 F. 3d at 841 (holding that a genuine issue of material fact existed when despite Sheriff's denial of personal participation, other affidavits contradicted such a denial ); *See* Complaint Exhibit A, Daniel Cohen Affidavit, dated June 12, 2009 ¶¶ 2-5 (Defendant Sheriff "as a matter of policy and practice, has repeatedly disregarded state court orders to admit ... defendants to bail, and affirmatively discouraged if not expressly refused

judgment for a supervisory defendant, "Plaintiffs must present sufficient evidence of either (1) a 'custom or policy [that] result[s] in deliberate indifference to constitutional rights or ... facts [that] support an inference that the supervisor[s] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so or (2) a history of widespread abuse [that] put [] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" *Id.* at 1328-1329 (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).

"As a supervisory official, Sheriff Johnson is only liable under §1983 for the unconstitutional acts of his subordinates if he personally participated in the allegedly unconstitutional conduct, or his actions were causally connected to the alleged constitutional deprivation. *See id.* at 1328. A causal connection may be shown by evidence of (1) "a custom or policy that results in deliberate indifference to constitutional rights," (2) "facts that support an inference that the supervisor [ ] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," or (3) "a history of widespread abuse" that notified the supervisor of the need to correct the alleged deprivation, but he failed to do so. *See Campbell v. Johnson,* 586 F.3d 835, 840 (11th Cir. 2009) (citing *West v. Tillman*, 496 F.3d 1321, 1328-1329 (11th Cir. 2007) (quotation marks, citation, and brackets omitted); *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008)(holding that the district court erred when it dismissed Douglas' complaint against assistant warden when inmate's family informed him of ongoing misconduct by his subordinates and assistant warden failed to stop such misconduct).

---

to allow such defendants, through third parties, to post bail."); *see also* Plaintiffs' Opposition, Ex. 7, Daniel Cohen Deposition, 71: 13-19.

The "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *See Hartley v. Parnell*, 193 F. 3d 1263, 1269 (11th Cir. 1999)(quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)).

Defendant Sheriff was deliberately indifferent to the rights of Mr. Mendez and the members of the organizational Plaintiffs. Defendant Sheriff at minimum sanctioned a custom or policy that resulted in the deliberate indifference to inmates' constitutional rights to bond and the right to be free from unlawful detention. He has no involvement in officer training. *See* Plaintiffs' Opposition, Ex. 8, Bradshaw Deposition, 65: 14-17. His lack of supervision and/or direct sanctioning of constitutional violations on bond denial and prolonged detention are causally connected to the persistence of constitutional violations still occurring. *See* Plaintiffs' Opposition, Ex. 6, Hanson Declaration at ¶¶12, 15 (stating, "The problems I spoke of last year, regarding one person lost in the system have more than doubled over the past several months."). Defendant Sheriff was certainly put on notice of such constitutional violations when Daniel Cohen filed his 17 habeas petitions against him; when Judge Warner reprimanded him in the *Ricketts* case for denying Mr. Ricketts the opportunity to post bond; and when Plaintiffs filed a habeas complaint and Section 1983 case in federal court. Yet, he continued to hold Mr. Mendez in excess of 48 hours on multiple occasions – even after a letter from Plaintiffs' Counsel Barry Silver requesting that Mr. Mendez be released pursuant to a Judge's order. *See* Plaintiffs' Opposition to Defendant's Motion to Dismiss, Exhibit 2, [DE 15]. Despite all of this notice, Defendant Sheriff fails to do anything to prevent these constitutional violations. *See* Plaintiffs' Opposition, Ex. 8, Bradshaw Deposition, 28: 2-6. Turning a blind-eye to an unconstitutional

policy and practice cannot isolate Defendant Sheriff from liability and in fact exemplifies reckless indifference.

This unconstitutional policy and practice is widespread spanning a few years and in the over five-month unlawful detention of Mr. Mendez and the constitutional violation of other organizational Plaintiffs' members or constituents. Mr. Cohen has testified that he recalls several dozen individuals that may have been affected by the Sheriff's policy and practice and knows of other public defenders that encountered similar bond-posting and unlawful detention violations. *See* Plaintiffs' Opposition, Ex. 7, Cohen Deposition, 33: 7-16. Defendant Sheriff has not even read this federal lawsuit and does not even know what it is about. *See* Plaintiffs' Opposition, Ex. 8, Deposition, 9: 9-25. He merely asked his attorney, "'What is the depo about, the basic concept without getting into details...I don't need to know all the intricacies.'" It's something about immigration laws, and my next question is 'Do we have the lawyer that's representing us involved,' and he said, 'Yes,' and I said, 'That's all I need to know.'" *Id.* at 9: 17-25. He didn't even learn about this lawsuit until his attorney told him he had to be deposed. *Id.* at 10: 1-3.

He hasn't even heard about the *Ricketts* case where a judge warned him against denying Mr. Ricketts the opportunity to post bond, until Plaintiffs' Counsel notified him about it during his deposition. *Id.* at 10; 12-16. When shown the following excerpt from the *Ricketts* case, "During the hearing, the Sheriff acknowledged that he should have allowed Appellant to post his bond," Defendant responded, "I don't know what Sheriff they're talking about, but it's not me." *Id.* at 26-28: 10-25. Yet, Defendant was the Sheriff on June 4, 2008, the date Ricketts was argued. *Id.* at 27: 1-13. Defendant Sheriff admitted that he has not done anything to prevent individuals from being denied after Mr. Mendez' case was filed, stating, "I can't do something

about something I didn't know about." *See* Plaintiffs' Opposition, Ex. 8, Bradshaw Deposition, 28: 2-6.

Defendant Sheriff does not even plan to talk to his counsel to ask about the nature of the case he was just deposed on, "not unless he tells me there's something I need to know." *Id.* at 21: 2-6. Even after learning about *Ricketts* and the 17 habeas petitions filed against him, Defendant Sheriff still does not have any intention of reading Plaintiffs' Complaint. *Id.* at 60: 21-23. Nor, does he have any intention of doing anything to remedy or prevent alleged unconstitutional bond practices. *Id.* at 58: 3-9. In fact, he does not even ask Legal Affairs if there is anything he needs to know about as he expects them to notify him on a need-to-know basis. *Id.* at 58: 17-25.

He cannot "specifically remember" whether he has ever heard of anyone having difficulty posting bond in his jail. *Id.* at 25: 1-7.[5] Yet his Counsel stipulated that 17 habeas petitions were filed against the Sheriff and that the Sheriff never saw those petitions, many, if not all, alleging a denial or interference of bond. *See* Complaint, Exhibit A, Cohen Affidavit ¶3; *See* Plaintiffs' Opposition, Ex. 8, Bradshaw Deposition, 46: 9-17; 48-49: 22-2.

He doesn't even know what Captain Manley does for him, yet Captain Manley is the PBSO officer that worked on ICE issues at the Gun Club Facility that is the PBSO point-person for this litigation before he was promoted to Captain now in-charge of the Palm Beach Sheriff's Office's Stockade Facility. *Id.* at 17: 4-8; Defendant's Motion at 5-6, ¶4.

Sheriff Bradshaw even implied that the right to bond may differ dependent upon whether an individual has a hold against them. He stated, "If they have a right to post a bond and there is no hold on them, we go by what the law is." *See* Plaintiffs' Opposition, Ex. 8, Bradshaw Deposition, 32:16-25. All of the foregoing demonstrates at a minimum, reckless indifference

[5] He is, however, aware that individuals have the right to post bond. *See* Ex, 8, Bradshaw Deposition, 23: 13-19.

and/or wanton conduct. To not know or care to know what is happening at your jail when you are the Sheriff and when constitutional violation complaints abound is certainly reckless and wanton conduct actionable under Section 1983.

III. Sheriff Bradshaw is Not Entitled to Qualified Immunity for Actions that Involve Clear and Persistent Violations of the Fourth and Fourteenth Amendments.

"[A] government official is not entitled to qualified immunity if his or her conduct violated a clearly established statutory or constitutional right and if the contours of the right were defined with such clarity that a reasonable official would have understood, at the time, that the conduct at issue violated that right." *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003); *see also Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Clearly, denying an individual to post bond and his/her prolonged detention over 48 hours is a violation of a constitutional right under the Fourth and Fourteenth Amendment of the Constitution. *See Gerstein v. Pugh*, 420 U.S. 103, 125 (1975); *Chavez v. State*, 832 So.2d 730, 751 (Fla. 2002); Fla. Stat. Sec. 901.151(4); *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-59 (1991). FSA erroneously asserts that this case is only about Defendant's practice of informing individuals of the consequences of posting bond. However, Plaintiffs have shown that Defendant is denying individuals the opportunity to post bond through the testimony and affidavits of Daniel Cohen, Pastor Nicolas Lopez, Ely Mendez, Gwen Morales, Jill Hanson, Jeronimo Camposeco, Subhash Kateel, and Gerald Mitchell. *See* Plaintiffs' Complaint, dated September 3, 2009 ("Complaint"), Exhibit B, Lopez' Affidavit, dated May 31, 2009, ¶¶7-8 [DE 1]; Complaint Exhibit C, Ely Mendez' Affidavit, dated May 31, 2009 ¶3; Plaintiffs' Opposition Exhibit 1, Deposition of Ely Mendez, 18-19: 21-1; 24: 21-24; Plaintiffs' Opposition Exhibit 2, Deposition of Pastor Nicolas Lopez, 39: 8-15, 41: 14-21, 53-54: 21-1; Plaintiffs' Opposition Exhibit 3, Deposition of Marcotulio Mendez, 53: 20-25, 73:13-23; 38: 19-21; Plaintiffs' Opposition Exhibit 4, Subhash Kateel Declaration dated July 16, 2009 at

¶¶6, 9; Plaintiffs' Opposition Exhibit 5, Jeronimo Camposeco Declaration dated July 9, 2009 at ¶6; Plaintiffs' Opposition Exhibit 6, Mary Jill Hanson Declaration dated July 26, 2010 at ¶¶ 6, 9, 12,15; Plaintiffs' Opposition Exhibit 7, Cohen Deposition, 71: 13-19; 120-122: 5-3; Plaintiffs' Opposition Exhibit 10, Gwen Morales Deposition, 25: 4-12; 41:13-20; Plaintiffs' Opposition Exhibit 11, Gerald Mitchell's Deposition, 16: 17-25.

If there was a violation of a constitutional right, then the court must determine if the right was clearly established. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court has noted that there may be cases where violations are "obvious" under constitutional standards and the generalities of case law. In such circumstances, specific case law is not required. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam).

The Court of Appeals for the Eleventh Circuit has provided three general means by which a court can determine whether § 1983 defendants had "fair warning." *See Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005); *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004). First, courts can "look to see whether the federal statute or constitutional provision is so clear, and the conduct is so bad, that it precludes qualified immunity even in the total absence of case law." *Id.* at 1250 n.6 (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)); see, e.g., *Evans*, 407 F.3d at 1283 (holding that "degrading and forceful manner of . . . strip search" could not have been considered reasonable under Fourth Amendment by any objectively reasonable police officer). In such circumstances, the constitutional or statutory violation must be so obvious that prior case law is unnecessary. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). The second and third means

do not apply here as the plain meaning of the Florida Constitution, Article I, Section 14 providing a right to bond and freedom from detention for pre-trial detainees is so clear that the Defendant had fair warning.[6]

The Florida constitution and case law are clear that bond denial and prolonged detention are unlawful such that these violations are obvious and provide Defendant with the necessary "fair warning." When local law enforcement agencies, including the Defendant Sheriff of Palm Beach County, arrest an individual, the United States Constitution, Florida Constitution and Florida law require that a judicial determination be promptly made following an arrest as to whether probable cause exists under criminal law for the person's continued detention. *See Gerstein v. Pugh*, 420 U.S. 103, 124-125 (1975); *Chavez v. State*, 832 So.2d 730, 751 (Fla. 2002); Fla. Stat. Sec. 901.151(4). The local law enforcement agency's authority to continue detaining that individual ceases as soon as there is no longer probable cause to hold him. *See Gregory v. City of Louisville*, 444 F.3d 725, 749 (6th Cir. 2006) ("continued detention without probable cause is an actionable Fourth Amendment injury under § 1983")(citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1292-1293 (10th Cir. 2004)). Generally, any holding of an individual over the 48-hour constitutionally permissible period without a judicial determination of probable cause is a violation of the Fourth Amendment, although a period under 48 hours can also be a

---

[6] The second and third means are as follows. "Second, if the conduct is not bad enough that it violates a constitutional provision on its face, [courts] look to case law that can be applied broadly to a number of factual situations." *Kesinger*, 381 F.3d at 1250 n.6 (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002)); "[B]roader, clearly established principle[s]" may "control the novel facts" in a particular situation. *Mercado*, 407 F.3d at 1159 (citing *Hope v. Pelzer*, 536 U.S. 730, 741). "These principles may give notice to officers, provided that the decisions clearly apply to the situation at hand. The 'reasoning, though not the holding' of prior cases can also send 'the same message to reasonable officers' in novel factual situations." *Id.* (quoting *Hope*, 536 U.S at 743). "Third, and finally, if no broad case law is applicable, [courts] turn to case law precedent that is tied to the facts." *Kesinger*, 381 F.3d at 1250 n.6 (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002)); "Any case law that is 'materially similar' to the facts in the case at hand must pre-date the officer's alleged improper conduct and 'truly compel the conclusion that the plaintiff had a right under federal law.'" *Mercado*, 407 F.3d at 1159 (quoting *Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir. 1998)). In the Eleventh Circuit, courts must confine their case law search to cases from the Supreme Court of the United States, the U.S. Court of Appeals for the Eleventh Circuit, and the relevant state supreme court. *Marsh v. Butler County*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc).

violation if unreasonably delayed. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-59 (1991). Defendant does not dispute this.

Moreover, the Florida Constitution, Art. 1, Sec. 14 provides a constitutional right to bail in non-capital cases, exceeding the protections secured under federal law under the Federal Judiciary Act. *See supra* at page 9, footnote 3. In *State v Arthur*, the Supreme Court of Florida found that the Florida constitutional provision granted additional rights not found in common law. *State v Arthur*, 390 So.2d 717, 719 (Fla. 1980). The state's interest in guaranteeing an accused's presence at trial "does not so outweigh [his] interest in retaining his liberty as to justify denying completely the opportunity to convince the court that release on bail is appropriate." *Id.*

The state trial court has the authority to order the arrestee's release on bail or bond, the amount of which is determined by the court. Fla. Stat. Sec. 903.03(1). The Sheriff has no lawful authority to refuse the bond or otherwise deny the arrestee the ability to post bond set by a court. 18 U.S.C.S. § 3142(b) (providing that it is within the purview of a judicial officer to set and order bond); see also *Campbell v. Johnson*, 586 F.3d 835, 841 (11th Cir. 2009) ("Sheriff [] acknowledges that he has no authority with respect to the amount or type of bond that is ordered or approved for an inmate."); *Ricketts*, 985 So.2d at 592 (Fla. 4th D.C.A. 2008) (Defendant Sheriff Bradshaw has acknowledged that he should allow individuals to post bond, including those that have ICE holds). In *Campbell*, the Eleventh Circuit held that Appellant's allegation that the Sheriff refused to accept his court-approved property bond could have resulted in his excessive detention and deprived him of due process under the Fifth and Fourteenth Amendments such that a Section 1983 claim could survive summary judgment. *See Campbell*,

586 F.3d at 844. Like *Campbell*, Defendant Sheriff willfully denied Mr. Mendez the opportunity to post bond in violation of his constitutional rights.

Plaintiff Mendez and Plaintiffs' members and/or constituents have a liberty interest in being released on bond pursuant to a proper judicial determination pending the resolution of the criminal charges against them. Defendant does not contend that one has a liberty interest in receiving bond and the refusal of such is unconstitutional. *See* Def. Motion to Dismiss Br. 3, [DE 6].

IV. Plaintiffs Have Established a Section 1983 Claim as Defendant's Actions Constitute an Unconstitutional Policy and Practice

FSA erroneously argues that Plaintiffs have only alleged one occurrence of a Section 1983 violation in Mr. Mendez's individual case such that Section 1983 does not apply. However, Plaintiffs have alleged multiple violations of Section 1983 such that a policy and practice of violation of the Fourth and Fourteenth Amendments has been shown. *See supra* at 7-9. In order for a plaintiff to demonstrate a policy or custom, it is "generally necessary to show a persistent and wide-spread practice." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004)(quoting *Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489 (11th Cir.1997), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 852, 139 L.Ed.2d 753 (1998)); *see also, Church v. City of Huntsville,* 30 F.3d 1332, 1345 (11th Cir.1994) (to establish a practice or custom, "it is generally necessary to show a persistent and widespread practice. ... Normally random acts or isolated incidents are insufficient to establish a custom or policy."). Defendant's actions and/or reckless indifference to preventing constitutional violations are persistent and widespread. Defendant violated Mr. Ricketts' opportunity to post bond; he denied Mr. Mendez the opportunity to post bond; and he has denied Corn Maya, the Florida Immigrant Coalition and El Sol's Members their opportunity to post bond. *See* Plaintiffs' Opposition Exhibit 4, Subhash Kateel Declaration dated July 16,

2009 at ¶¶6, 9; Plaintiffs' Opposition Exhibit 5, Jeronimo Camposeco Declaration dated July 9, 2009 at ¶6; Plaintiffs' Opposition Ex. 6, Hanson Declaration at ¶¶12, 15 (stating, "The problems I spoke of last year, regarding one person lost in the system have more than doubled over the past several months."). Seventeen habeas petitions were filed against Defendant Sheriff, many of which alleged bond denial or interference. *See* Plaintiffs' Opposition Exhibit 8 ("Ex. 8"), Ric L. Bradshaw Deposition ("Bradshaw Deposition"), 42:9-13.

These incidents are not isolated and instead constitute a uniform policy and practice that has spanned years and is so widespread such that a policy and practice of violating individuals' Fourth and Fourteenth Amendments has been delineated. *See* Plaintiffs' Complaint, dated September 3, 2009 ("Complaint"), Exhibit B, Lopez' Affidavit, dated May 31, 2009, ¶¶7-8 [DE 1]; Complaint Exhibit C, Ely Mendez' Affidavit, dated May 31, 2009 ¶3; Plaintiffs' Opposition Exhibit 1, Deposition of Ely Mendez, 18-19: 21-1; 24: 21-24; Plaintiffs' Opposition Exhibit 2, Deposition of Pastor Nicolas Lopez, 39: 8-15, 41: 14-21, 53-54: 21-1; Plaintiffs' Opposition Exhibit 3, Deposition of Marcotulio Mendez, 38: 19-21, 53: 20-25; 73:13-23; Plaintiffs' Opposition Exhibit 4, Subhash Kateel Declaration dated July 16, 2009 at ¶¶6, 9; Plaintiffs' Opposition Exhibit 5, Jeronimo Camposeco Declaration dated July 9, 2009 at ¶6; Plaintiffs' Opposition Exhibit 6, Mary Jill Hanson Declaration dated July 26, 2010 at ¶¶ 6, 9, 12,15; Plaintiffs' Opposition Exhibit 7, Cohen Deposition, 71: 13-19; 120-122: 5-3; Plaintiffs' Opposition Exhibit 10, Gwen Morales Deposition, 25: 4-12; 41:13-20. Plaintiffs' Opposition Exhibit 11, Gerald Mitchell's Deposition, 16: 17-25. These multiple violations evidence a policy and practice of Defendant violating individuals' rights to post bond and be free of prolonged detention.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to deny Defendant's Motion for Summary Judgment and to disregard FSA's Memorandum in Support of Defendant's Motion as it was improperly filed.

Respectfully Submitted,

Dated: August 2, 2010

__/s/_Diana S. Sen__________________
Barry M. Silver (FBN 382108)
1200 S. Rogers Circle, Suite 8
Boca Raton, FL 33487
561-483-6900 (phone)
561-488-4676 (fax)
barryboca@aol.com

Diana S. Sen, Esq. *(pro hac vice)*
LatinoJustice PRLDEF
99 Hudson St. - 14th Floor
New York, NY 10013
212-219-3360 (phone)
212-431-4276 (fax)
dsen@latinojustice.org
*Attorneys for Plaintiffs*

Certificate of Service

I hereby certify to the accuracy of the foregoing and that a copy has been electronically filed by ECF on this 2nd day of August 2010, and a copy was sent via first class U.S. Mail to:

Fred H. Gelston, Esq.
601 North Dixie Highway, Suite C
West Palm Beach, FL 33401
Attorney for Defendant Sheriff

Lesley Blackner
123 Australian Ave.
Palm Beach, FL 33480

Michael M. Hethmon
Garret Roe
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Attorneys for Florida Sheriff's Association

/s/_Diana S. Sen_______________
Diana Sen, LatinoJustice PRLDEF